Melissa G. Fulgencio (CBN 277663)
E-mail: mel@upliftlaw.net
Stephanie Beale (CBN 326864)
E-mail: stephanie@upliftlaw.net
**UPLIFT LAW, P.C.**
650 North Rose Drive, Suite 620
Placentia, California 92870
Telephone: 714.248.5612
Facsimile: 714.582.3990

ATTORNEYS FOR PLAINTIFFS,
Mission Fitness Center, LLC, etc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MISSION FITNESS CENTER, LLC, a California limited liability company; CALIFORNIA CROSSFIT, LLC, a California limited liability company; FITNESS FIRST, INC., a California corporation; REP MAX PERFORMANCE, LLC, a California limited liability company; SOCAL POWERLIFTING, LLC, a California limited liability company; MOVEMENT FX, LLC, a California limited liability company; LYONS PROPERTY MANAGEMENT COMPANY, INC., a California corporation; JAYDA, INC., a California corporation; KOGYM, LLC, a California corporation; and HOUSE OF GAINS GYM, INC., a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> GAVIN NEWSOM, in his official capacity as Governor of California; XAVIER BECERRA, in his official capacity as the Attorney General of California; SANDRA SHREWY, MPH, MSW, in her official capacity as the Director and State Public Health Officer; ERIC GARCETTI, in his official capacity as Mayor of the City of Los Angeles; BARBARA FERRER, in her official capacity as the Los Angeles Director and Public Health Officer; ALEX | Case No. _____ <br><br> **COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES** |

1  VILLANUEVA, in his official capacity as
   the Los Angeles County Sheriff; MIKE
2  BERTELSEN, in his official capacity as
   Chief of Police for the City of Azusa;
3  HILDA SOLIS, in her official capacity as a
   Los Angeles County Supervisor; MARK
4  RIDLEY-THOMAS, in his official capacity
   as a Los Angeles County Supervisor;
5  SHEILA KUEHL, in her official capacity as
   a Los Angeles County Supervisor; JANICE
6  HAHN, in her official capacity as a Los
   Angeles County Supervisor; KATHRYN
7  BARGER, in her official capacity as a Los
   Angeles County Supervisor; CLAYTON
8  CHAU, MD, PHD, in his official capacity as
   the Orange County Director and Public
9  Health Officer; DON BARNES, in his
   official capacity as the Orange County
10 Sheriff; MIKE HAMEL, in his official
   capacity as Chief of Police for the City of
11 Irvine; ANDREW DO, in his official
   capacity as Orange County Supervisor;
12 MICHELLE STEEL, in her official capacity
   as Orange County Supervisor; DONALD P.
13 WAGNER, in his official capacity as
   Orange County Supervisor; DOUG
14 CHAFFE, in his official capacity as an
   Orange County supervisor; LISA
15 BARTLETT, in her official capacity as
   Orange County Supervisor; ROBERT
16 LEVIN, MD, in his official capacity as the
   Ventura County Director and Public Health
17 Officer; WILLIAM AYUB, in his official
   capacity as the Ventura County Sheriff;
18 ANDREW SALINAS, in his official
   capacity as the Chief of Police for the City
19 of Port Hueneme; STEVE BENNETT, in his
   official capacity as Ventura County
20 Supervisor; LINDA PARKS, in her official
   capacity as Ventura County Supervisor;
21 KELLY LONG, in her official capacity as
   Ventura County Supervisor; BOB HUBER,
22 in his official capacity as Ventura County
   Supervisor; JOHN C. ZARAGOZA, in his
23 official capacity as Ventura County
   Supervisor; HENNING ANSORG, in his
24 official capacity as Health Officer for Santa
   Barbara County; BILL BROWN, in his
25 official capacity as the Santa Barbara
   County Sheriff; DAS WILLIAMS, in his
26 official capacity as Santa Barbara County
   Supervisor; GREGG HART, in his official
27 capacity as Santa Barbara County
   Supervisor; JOAN HARTMANN, in her
28 official capacity as Santa Barbara County

-2-

1  Supervisor; PETER ADAM, in his official
   capacity as Santa Barbara County
2  Supervisor; STEVE LAVAGNINO, in his
   official capacity as Santa Barbara County
3  Supervisor; CAMERON KAISER, in his
   official capacity as the Riverside County
4  Public Health Officer; CHAD BIANCO, in
   his official capacity as the Riverside County
5  Sheriff; KEVIN JEFFRIES, in his official
   capacity as Riverside County Supervisor;
6  KAREN SPIEGEL, in her official capacity
   as Riverside County Supervisor; CHUCK
7  WASHINGTON, in his official capacity as
   Riverside County Supervisor; V. MANUEL
8  PEREZ, in his official capacity as Riverside
   County Supervisor; JEFF HEWITT, in his
9  official capacity as Riverside County
   Supervisor; ERIN GUSTAFSON, MD,
10 MPH, in her official capacity as Acting
   Public Health Officer for San Bernardino
11 County; GARY MCBRIDE, in his official
   capacity as Director and Chief Executive
12 Officer of the Office of Emergency Services
   for San Bernardino County; JOHN
13 MCMAHON, in his official capacity as San
   Bernardino County Sheriff; ROBERT A
14 LOVINGOOD, in his official capacity as
   San Bernardino County Supervisor; JANICE
15 RUTHERFORD, in her official capacity as
   San Bernardino County Supervisor; DAWN
16 ROWE, in her official capacity as San
   Bernardino County Supervisor; CURT
17 HAGMAN, in his official capacity as San
   Bernardino County Supervisor; JOSIE
18 GONZALES, in her official capacity as San
   Bernardino County Supervisor; and DOES 1
19 through 100,

20              Defendants.

21

22      Plaintiffs Mission Fitness Center, LLC, a California limited liability company;

23 California Crossfit, LLC, a limited liability company; Fitness First, Inc., a California

24 corporation; Rep Max Performance, LLC, a California limited liability company; SoCal

25 Powerlifting, LLC, a California limited liability company; Movement FX, LLC, a California

26 limited liability company; Lyons Property Management Company, Inc., a California

27 corporation; Jayda, Inc., a California corporation; KOGym, LLC, a California corporation;

28 and House of Gains Gym, Inc., a California corporation (hereinafter collectively referred to

as "Plaintiffs"), by and through their attorneys of record, Uplift Law, P.C., allege claims against the above-named Defendants Gavin Newsom, in his official capacity as Governor of California; Xavier Becerra, in his official capacity as Attorney General of California; Sandra Shrewy, MPH, MSW, in her official capacity as the Director and State Public Health Officer; Eric Garcetti, in his official capacity as Mayor of the City of Los Angeles; Barbara Ferrer, in her official capacity as the Los Angeles Director and Public Health Officer; Alex Villanueva, in his official capacity as the Los Angeles County Sheriff; Mike Bertelsen, in his official capacity as Chief of Police for the City of Azusa; Hilda Solis, in her official capacity as a Los Angeles County Supervisor; Mark Ridley-Thomas, in his official capacity as a Los Angeles County Supervisor; Sheila Kuehl, in her official capacity as a Los Angeles County Supervisor; Janice Hahn, in her official capacity as a Los Angeles County Supervisor; Kathryn Barger, in her official capacity as a Los Angeles County Supervisor; Clayton Chau, MD, Phd, in his official capacity as the Orange County Director and Public Health Officer; Don Barnes, in his official capacity as the Orange County Sheriff; Mike Hamel, in his official capacity as Chief of Police for the City of Irvine; Andrew Do, in his official capacity as an Orange County Supervisor; Michelle Steel, in her official capacity as an Orange County Supervisor; Donald P. Wagner, in his official capacity as an Orange County Supervisor; Doug Chaffe, in his official capacity as an Orange County Supervisor; Lisa Bartlett, in her official capacity as an Orange County Supervisor; Robert Levin, MD, in his official capacity as the Ventura County Director and Public Health Officer; William Ayub, in his official capacity as the Ventura County Sheriff; Andrew Salinas, in his official capacity as the Chief of Police for the City of Port Hueneme; Steve Bennett, in his official capacity as a Ventura County Supervisor; Linda Parks, in her official capacity as a Ventura County Supervisor; Kelly Long, in her official capacity as a Ventura County Supervisor; Bob Huber, in his official capacity as a Ventura County Supervisor; John C. Zaragoza, in his official capacity as a Ventura County Supervisor; Henning Ansorg, in his official capacity as Health Officer for Santa Barbara County; Bill Brown in his official capacity as Santa Barbara County Sheriff; Das Williams, in his official capacity as a Santa Barbara County Supervisor; Gregg Hart, in his

official capacity as a Santa Barbara County Supervisor; Joan Hartmann, in her official capacity as a Santa Barbara County Supervisor; Peter Adam, in his official capacity as a Santa Barbara County Supervisor; Steve Lavagnino, in his official capacity as a Santa Barbara County Supervisor; Cameron Kaiser, in his official capacity as the Riverside County Public Health Officer; Chad Bianco, in his official capacity as the Riverside County Sheriff; Kevin Jeffries, in his official capacity as a Riverside County Supervisor; Karen Spiegel, in her official capacity as a Riverside County Supervisor; Chuck Washington, in his official capacity as a Riverside County Supervisor; V. Manuel Perez, in his official capacity as a Riverside County Supervisor; Jeff Hewitt, in his official capacity as a Riverside County Supervisor; Erin Gustafson, MD, MPH, in her official capacity as Acting Public Health Officer for San Bernardino County; Gary McBride, in his official capacity as Director and Chief Executive Officer of the Office of Emergency Services for San Bernardino County; John McMahon, in his official capacity as San Bernardino County Sheriff; Robert A. Lovingood, in his official capacity as a San Bernardino County Supervisor; Janice Rutherford, in her official capacity as a San Bernardino County Supervisor; Dawn Rowe, in her official capacity as a San Bernardino County Supervisor; Curt Hagman, in his official capacity as a San Bernardino County Supervisor; Josie Gonzales, in her official capacity as a San Bernardino County Supervisor; and DOES 1 through 100 (hereinafter collectively referred to as "Defendants") as follows:

## **NATURE OF THE ACTION**

1.     Following the outbreak and subsequent global pandemic regarding the novel coronavirus, the State of California began taking purported emergency measures in an effort to slow the spread of COVID-19 such that the medical infrastructure in place is not overwhelmed.

2.     The sovereign people of the State of California have graciously endured an unprecedented suspension of their civil liberties.

3.     However, all government power in this country, no matter how well-intentioned, derives only from the state and federal constitutions.  **Governmental power cannot be**

**exercised in conflict with the constitution, even in a pandemic**.  The Constitution is not suspended when the government declares a state of disaster.  *See In Re Salon A La Mode, Et Al.*, No. 20-0340 (Tex. May 5, 2020) (citing *In Re Abbott*, No. 20-0291, 2020 WL 1943226, at *1 (Tex. Apr. 23, 2020).

4.     As COVID-19 spread, local officials scrambled to implement a myriad of measures purporting to protect Californians. California's Governor issued Executive Orders to establish state-wide regulations, which were also implemented and enforced on the county and city level.

5.     Plaintiffs have filed this Action in an effort to challenge the constitutionality of Defendants' Orders that severely limit Plaintiffs' civil rights and liberties by ordering the citizens of the State of California "shelter-in-place" and effectively close any businesses Defendants have arbitrarily deemed "Non-Essential."

6.     Defendants' Orders have violated, and continue to violate, Plaintiffs' rights under both the California Constitution, as well as the United States Constitution. As a result of Defendants' unlawful violations of Plaintiffs' civil liberties and rights, Defendants have also caused severe economic damage to Plaintiffs. The economic damages suffered by Plaintiffs is such that Plaintiffs may never financially recover from the harm

7.     Accordingly, Plaintiffs have filed this Action seeking: 1) equitable and injunctive relief to enjoin enforcement of Defendants' Orders; 2) declaratory relief that Defendants' Orders violate Plaintiffs' civil rights under: a) U.S.C. § 1983 of the Federal Civil Rights Act; b) the Due Process Clause of the Fifth Amendments; c) the Due Process Clause of the Fourteenth Amendments; and c) Article 1, Sections 1, 7, and 19 of the California Constitution; 3) attorneys' fees and costs incurred by Plaintiffs' in an amount according to proof; 4) monetary damages; and 5) such other and further relief as this Court deems just and appropriate.

### THE PARTIES

**Plaintiffs**

8.     Plaintiff Mission Fitness Center, LLC is a California limited liability company

COMPLAINT

authorized and doing business in the State of California as Mission Fitness Center ("Mission"). Mission's principal place of business is located in Alhambra, Los Angeles County, California.

9.     Plaintiff California Crossfit, LLC is a California limited liability company authorized and doing business in the State of California as Crossfit Horsepower ("Horsepower"). Horsepower's principal place of business is located in Studio City, Los Angeles County, California.

10.     Plaintiff Fitness First, Inc. is a California corporation authorized and doing business in the State of California as Triad Fitness ("Triad"). Triad's principal place of business is located in Azusa, Los Angeles County, California.

11.     Plaintiff Rep Max Performance, LLC is a California limited liability company authorized and doing business in the State of California as Rep Max Performance ("Rep Max"). Rep Max's principal place of business is located in Orange, Orange County, California.

12.     Plaintiff SoCal Powerlifting, LLC is a California limited liability company authorized and doing business in the State of California as SoCal Powerlifting ("SoCal"). SoCal's principal place of business is located in Irvine, Orange County, California.

13.     Plaintiff Movement FX, LLC is a California limited liability company authorized and doing business in the State of California as Movement FX ("FX"). FX's principal place of business is located in Temecula, Riverside County, California.

14.     Plaintiff Lyons Property Management Company, Inc. is a California corporation authorized and doing business in the State of California as The Gym ("The Gym"). The Gym's principal place of business is located in Victorville, San Bernardino County, California.

15.     Plaintiff Jayda, Inc. is a California corporation authorized and doing business in the State of California as All Sports Fitness Center ("All Sports"). All Sports' principal place of business is located in Santa Ynez, Santa Barbara County, California.

16.     Plaintiff KOGym, LLC is a California limited liability company authorized and doing business in the State of California as KO Gym ("KO"). KO's principal place of business is located in Oxnard, Ventura County, California.

COMPLAINT

17.     Plaintiff House of Gains Gym, Inc. is a California corporation authorized and doing business in the State of California as House of Gains ("House of Gains"). House of Gains' principal place of business is located in Port Hueneme, Ventura County, California.

**Defendants**

18.     Defendant Governor Gavin Newsom ("Newsom" or "Governor")) is made a party to this Action in his official capacity as the Governor of the State of California. The California Constitution vests the "supreme executive power of the State" in the Governor, who "shall see that the law is faithfully executed." Cal. Const. Art. V, § 1. Governor Newsom signed Executive Order N-33-20 (the "Executive Order") on or about March 17, 2020.

19.     Defendant Xavier Becerra ("Becerra") is made a party to this Action in his official capacity as the Attorney General of California. Under California law, Becerra is the chief law enforcement officer with supervision over all sheriffs in the State of California. Cal. Const. Art. V, § 13.

20.     Defendant Sandra Shrewy, MPH, MSW("Shrewy") is made a party to this Action in her official capacity as the Director and State Public Health Officer and is sued in her official capacity pursuant to *Ex Parte Young* to challenge the constitutionality of her office's list of "Essential Critical Infrastructure Workers" which was issued by Shrewy on March 22, 2020 to complement Newsom's Executive Order.

21.     Defendant Eric Garcetti ("Garcetti") is made a party to this Action in his official capacity as the Mayor of Los Angeles in the State of California. Steinberg is sued in his official capacity under the rule of *Ex Parte Young* to enjoin the enforcement of any Order, instituted to shut down all "Non-Essential" businesses.

22.     Defendant Barbara Ferrer ("Ferrer") is made a party to this Action in her official capacity as the Los Angeles County Public Health Officer in the State of California. Ferrer is sued in her official capacity under the rule of *Ex Parte Young* to enjoin the enforcement of any Order, instituted to shut down all "Non-Essential" businesses.

23.     Defendant Alex Villanueva ("Villanueva") is made a party to this Action in his official capacity as Los Angeles County Sheriff. Under California law, Ferrara has the

1  responsibility to enforce the Los Angeles County Order in Los Angeles County. *See* Cal. Gov't
2  Code § 26601.

3        24.    Defendant Mike Bertelsen ("Bertelsen") is made a party to this Action in his
4  official capacity as the Chief of Police for the City of Azusa. Under California law, Bertelsen
5  has the responsibility to enforce the Los Angeles County Order in the City of Azusa. *See* Cal.
6  Gov't Code § 26601.

7        25.    Defendant Hilda Solis is made a party to this Action in her official capacity as a
8  member of the Los Angeles County Board of Supervisors, which exercises broad legislative,
9  executive, and quasi-judicial authority under California law, including the supervision of the
10  county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal.
11  Health & Safety Code § 101000.

12        26.    Defendant Mark Ridley-Thomas is made a party to this Action in his official
13  capacity as a member of the Los Angeles County Board of Supervisors, which exercises broad
14  legislative, executive, and quasi-judicial authority under California law, including the
15  supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§
16  25000, *et seq.*; Cal. Health & Safety Code § 101000.

17        27.    Defendant Sheila Kuehl is made a party to this Action in her official capacity as
18  a member of the Los Angeles County Board of Supervisors, which exercises broad legislative,
19  executive, and quasi-judicial authority under California law, including the supervision of the
20  county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal.
21  Health & Safety Code § 101000.

22        28.    Defendant Janice Hahn is made a party to this Action in her official capacity as
23  a member of the Los Angeles County Board of Supervisors, which exercises broad legislative,
24  executive, and quasi-judicial authority under California law, including the supervision of the
25  county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal.
26  Health & Safety Code § 101000.

27        29.    Defendant Kathryn Barger is made a party to this Action in her official capacity
28  as a member of the Los Angeles County Board of Supervisors, which exercises broad

COMPLAINT

legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

30.     Defendant Clayton Chau, MD, Phd ("Chau") is made a party to this Action in his official capacity as the Orange County Public Health Officer. Chau is sued in his official capacity under the rule of *Ex Parte Young* to enjoin the enforcement of any Order, instituted to shut down all "Non-Essential" businesses.

31.     Defendant Don Barnes ("Barnes") is made a party to this Action in his official capacity as Orange County Sheriff. Under California law, Barnes has the responsibility to enforce the Orange County Order in Orange County. *See* Cal. Gov't Code § 26601.

32.     Defendant Mike Hamel ("Hamel") is made a party to this Action in his official capacity as the Chief of Police for the City of Irvine. Under California law, Hamel has the responsibility to enforce the Orange County Order in the City of Irvine. *See* Cal. Gov't Code § 26601.

33.     Defendant Andrew Do is made a party to this Action in his official capacity as a member of the Orange County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

34.     Defendant Michelle Steel is made a party to this Action in her official capacity as a member of the Orange County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

35.     Defendant Donald P. Wagner is made a party to this Action in his official capacity as a member of the Orange County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the

1   supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§
2   25000, *et seq.*; Cal. Health & Safety Code § 101000.

3       36.   Defendant Doug Chaffe is made a party to this Action in his official capacity as
4   a member of the Orange County Board of Supervisors, which exercises broad legislative,
5   executive, and quasi-judicial authority under California law, including the supervision of the
6   county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal.
7   Health & Safety Code § 101000.

8       37.   Defendant Lisa Bartlett is made a party to this Action in her official capacity as
9   a member of the Orange County Board of Supervisors, which exercises broad legislative,
10  executive, and quasi-judicial authority under California law, including the supervision of the
11  county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal.
12  Health & Safety Code § 101000.

13      38.   Defendant Robert Levin, MD ("Levin") is made a party to this Action in his
14  official capacity as the Ventura County Public Health Officer. Levin is sued in his official
15  capacity under the rule of *Ex Parte Young* to enjoin the enforcement of any Order, instituted
16  to shut down all "Non-Essential" businesses.

17      39.   Defendant William Ayub ("Ayub") is made a party to this Action in his official
18  capacity as Ventura County Sheriff. Under California law, Ayub has the responsibility to
19  enforce the Ventura Order in Ventura County. *See* Cal. Gov't Code § 26601.

20      40.   Defendant Andrew Salinas ("Salinas") is made a party to this Action in his
21  official capacity as the Chief of Police for the City of Port Hueneme. Under California law,
22  Hamel has the responsibility to enforce the Ventura County Order in the City of Port Hueneme.
23  *See* Cal. Gov't Code § 26601.

24      41.   Defendant Steve Bennett is made a party to this Action in his official capacity
25  as a member of the Ventura County Board of Supervisors, which exercises broad legislative,
26  executive, and quasi-judicial authority under California law, including the supervision of the
27  county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal.
28  Health & Safety Code § 101000.

-11-

42.     Defendant Linda Parks is made a party to this Action in her official capacity as a member of the Ventura County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

43.     Defendant Kelly Long is made a party to this Action in her official capacity as a member of the Ventura County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

44.     Defendant Bob Huber is made a party to this Action in his official capacity as a member of the Ventura County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

45.     Defendant John C. Zaragoza is made a party to this Action in his official capacity as a member of the Ventura County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

46.     Defendant Henning Ansorg ("Ansorg") is made a party to this Action in his official capacity as the Santa Barbara County Public Health Officer. Ansorg is sued in his official capacity under the rule of *Ex Parte Young* to enjoin the enforcement of any Order, instituted to shut down all "Non-Essential" businesses.

47.     Defendant Bill Brown ("Barnes") is made a party to this Action in his official capacity as Santa Barbara County Sheriff. Under California law, Barnes has the responsibility to enforce the Santa Barbara County Order in Santa Barbara County. *See* Cal. Gov't Code § 26601.

COMPLAINT

48.     Defendant Das Williams is made a party to this Action in his official capacity as a member of the Santa Barbara County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

49.     Defendant Gregg Hart is made a party to this Action in his official capacity as a member of the Santa Barbara County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

50.     Defendant Joan Hartmann is made a party to this Action in her official capacity as a member of the Santa Barbara County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

51.     Defendant Peter Adam is made a party to this Action in his official capacity as a member of the Santa Barbara County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

52.     Defendant Steve Lavagnino is made a party to this Action in his official capacity as a member of the Santa Barbara County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

53.     Defendant Cameron Kaiser ("Kaiser") is made a party to this Action in his official capacity as the Riverside County Public Health Officer. Kaiser is sued in his official

capacity under the rule of *Ex Parte Young* to enjoin the enforcement of any Order, instituted to shut down all "Non-Essential" businesses.

54.     Defendant Chad Bianco ("Bianco") is made a party to this Action in his official capacity as Riverside County Sheriff. Under California law, Barnes has the responsibility to enforce the Riverside County Order in Riverside County. *See* Cal. Gov't Code § 26601.

55.     Defendant Kevin Jeffries is made a party to this Action in his official capacity as a member of the Riverside County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

56.     Defendant Karen Spiegel is made a party to this Action in her official capacity as a member of the Riverside County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

57.     Defendant Chuck Washington is made a party to this Action in his official capacity as a member of the Riverside County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

58.     Defendant V. Manel Perez is made a party to this Action in his official capacity as a member of the Riverside County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

59.     Defendant Jeff Hewitt is made a party to this Action in his official capacity as a member of the Riverside County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the

county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

60. Defendant Erin Gustafson, MD, MPH ("Gustafson") is made a party to this Action in her official capacity as the San Bernardino County Public Health Officer. Gustafson is sued in her official capacity under the rule of *Ex Parte Young* to enjoin the enforcement of any Order, instituted to shut down all "Non-Essential" businesses.

61. Defendant Gary McBride ("McBride") is made a party to this Action in his official capacity as Director and Chief Executive Officer of the Office of Emergency Services for San Bernardino County. McBride is sued in his official capacity under the rule of *Ex Parte Young* to enjoin the enforcement of any Order, instituted to shut down all "Non-Essential" businesses.

62. Defendant John McMahon ("McMahon") is made a party to this Action in his official capacity as San Bernardino County Sheriff. Under California law, McMahon has the responsibility to enforce the San Bernardino County Order in San Bernardino County. *See* Cal. Gov't Code § 26601.

63. Defendant Robert A. Lovingood is made a party to this Action in his official capacity as a member of the San Bernardino County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

64. Defendant Janice Rutherford is made a party to this Action in her official capacity as a member of the San Bernardino County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

65. Defendant Dawn Rowe is made a party to this Action in her official capacity as a member of the San Bernardino County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the

supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

66.     Defendant Curt Hagman is made a party to this Action in his official capacity as a member of the San Bernardino County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

67.     Defendant Josie Gonzales is made a party to this Action in her official capacity as a member of the San Bernardino County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

68.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 100, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as a DOE is responsible in some manner for the events and happenings herein referred to. As such, Plaintiffs will seek leave of Court to amend this Complaint to insert the true names and capacities of said Defendant as they become identified.

69.     As alleged herein, Defendants are responsible for the implementation of various Executive Order(s) and other Civil Orders ("Orders") that are in direct violation of the United States and California Constitutions, including but not limited to, 42 U.S.C. § 1983. Accordingly, each and every Defendant acted under color of state law with respect to all acts or omissions herein alleged.

## JURISDICTION AND VENUE

70.     The Court has subject matter jurisdiction over the claims asserted in this action based upon Federal Question Jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this action involves rights derived from the United States Constitution and because the action

COMPLAINT

seeks to prevent Defendants from interfering with federal rights. This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief and damages under 28 U.S.C. § 1343(a); and attorneys' fees and costs under 42 U.S.C. § 1988.

71.     Furthermore, this is, in part, a civil action under 42 U.S.C. § 1983 seeking damages and injunctive relief against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiffs of rights secured under the Constitution and laws of the United States, as well as for refusing or neglecting to prevent such deprivations and denials to Plaintiffs.

72.     Additionally, this action arises under 42 U.S.C. § 1983 in relation to Defendants' deprivation of Plaintiffs' Constitutional rights to Due Process and Equal Protection under the Fifth and Fourteenth Amendments to the United States Constitution.

73.     Jurisdiction is also appropriate in this Court pursuant to 28 U.S.C. § 1343(a)(3)–(4) to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege, or immunity secured by the Constitution, and to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

74.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because Plaintiffs' state claims are so related to their federal claims such that they are part of the same case and controversy of those federal claims described herein under Article III of the United States Constitution.

75.     The U.S. District Court for the Central District of California is the appropriate venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and (2) because it is the District in which Defendants either maintain offices or do substantial official government work; the District in which Defendants exercise authority in their official capacities; and the District in which Defendants will continue to enforce the Orders and Emergency Directives that are the basis for Plaintiffs' claims; and the District in which substantially all of the events occurred that have given rise to Plaintiffs' claims.

76.     There is a present and actual controversy between and among Plaintiffs and Defendants.

77.     The relief requested is authorized pursuant to 28 U.S.C. §§ 2201 and 2202 (declaratory judgment); 28 U.S.C. § 1651(a) (injunctive relief); 42 U.S.C. § 1988 (right to costs, including attorneys' fees); and Cal. Gov't. Code § 8572 (restitution for state commandeering of private or personal property during state of emergency).

## SUBSTANTIVE ALLEGATIONS

## I.     THE GOVERNOR'S STAY-AT-HOME ORDER

78.     On March 4, 2020, California Governor Gavin Newsom ("Newsom") declared a state of emergency to exist in California in light of the COVID-19 pandemic. A true and correct copy of Defendant Newsom's Proclamation of a State of Emergency is attached hereto and incorporated herein as **Exhibit 1**.

79.     On or about March 13, 2020, President Donald J. Trump proclaimed a National State of Emergency as a result of the threat of the emergence of COVID-19. https://www.whitehouse.gov/presidential-actions/proclamation-declaringnational-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

80.     Subsequently, on March 19, 2020, Defendant Newsom signed Executive Order N-33-20 (the "Executive Order"). The Executive Order directed all residents "to immediately heed the current State public health directives," including an order of the state public health officer reprinted in the Executive Order. A true and correct copy of Defendant Newsom's Executive Order N-33-20 is attached hereto and incorporated herein as **Exhibit 2**.

81.     The Executive Order "order[ed] all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sector as outlined at https://www.cisa.gov/identifying-critical- infrastructure-during-covid-19."

82.     The Executive Order further explained that "[t]he federal government has identified sixteen (16) critical infrastructure sectors whose assets, systems, and networks, whether physical or virtual, are considered so vital to the United States that their incapacitation or destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof." Defendant Newsom therefore "order[ed] that Californians

-18-

working in these 16 critical infrastructure sectors may continue their work because of the importance of these sectors to Californians' health and well-being."

83.     The Executive Order explained that it aimed "to establish <u>consistency</u> across the state in order to ensure that we mitigate the impact of COVID-19."

84.     This March 19, 2020 Executive Order sought to balance the need to protect Californians from infection against the need to maintain Californians' access to vital supplies and services.  In so doing, Defendant Newsom based the policy on one issue: the federal government's characterization of certain businesses as being a part of the "critical infrastructure" and therefore "essential" to Californians. Thus, those businesses deemed "essential" were and are allowed to continue operating as part of California's coordinated response to COVID-19.

85.     All other businesses, such as Plaintiffs, who did not fall into any of the sixteen (16) "critical infrastructure" sectors, were automatically defined as "Non-Essential" and were forced to immediately cease operations.

86.     The Executive Order was clear that it was **<u>not</u>** establishing a state-level baseline inviting county innovation above and beyond a minimum; rather, this Executive Order intended that only certain essential businesses shall be permitted to remain open statewide to provide essential goods and services to all Californians.

87.     The Public Health Officers ("PHO") for each county were, in part, tasked with implementing these overreaching orders.  It became clear very early on that the PHOs were completely out of their depth.  PHOs had been given a vast amount of power that they were incompetent to wield. Unlike the Governor, PHOs are not elected positions. In fact, PHOs, some of whom are tasked with the public health of millions, do not require a degree in science or medicine.

88.     Defendants Ferrer, Chau, Levin, Ansorg, Kaiser, Gustafson, and McBride, and or their predecessors, issued similar "shelter-in-place," "stay at home," and "shut down" orders (the "County Orders") for all "Non-Essential" businesses on or about March 17, 2020 for the

1 Counties of Los Angeles, Orange, Ventura, Santa Barbara, Riverside, and San Bernardino.

2 True and correct copies of these County Orders are attached hereto as **Exhibit 3**.

3      89.    Since the passage of the County Orders, Defendants Ferrer, Chau, Levin,

4 Ansorg, Kaiser, Gustafson, and McBride, and/or their predecessors, have sought to vigorously

5 enforce them against Plaintiffs and other "Non-Essential" businesses.

6      90.    Additionally, on or about March 22, 2020, Defendant Shrewy issued a

7 comprehensive directive setting forth the types of "Essential Critical Infrastructure Workers"

8 that were to "help state, local, tribal and industry partners as they work to protect communities,

9 while ensuring continuity of functions critical to public health and safety, as well as economic

10 and national security."

11      91.    Altogether, Defendants' Orders have caused widespread and catastrophic

12 damage to the California economy through the government-mandated closure of Plaintiffs'

13 businesses.

14      92.    As a result of Defendants' Orders mandating closure, Plaintiffs have had

15 difficulty in satisfying their financial obligations, having been forced to lay off a significant

16 number of employees.

17      93.    Plaintiffs have further expended large sums of money in an effort to comply with

18 Defendants' vague Orders.

19      94.    On numerous occasions, Plaintiffs have sought clarification regarding

20 Defendants' Orders and apparently arbitrary or selective enforcement thereof, to no avail.

21      95.    The county level orders that were promulgated in response to the Governor's

22 Order were haphazard, at best, leaving California with a patchwork of entirely different laws

23 for each county. Counties were unable to agree even upon the simplest issues, such as indoor

24 and/or outdoor mask wearing, or the use of gloves.

25      96.    Further, upon information and belief, despite repeated requests by media and the

26 press, the scientific data that Defendants relied upon in promulgating their orders has never

27 been disclosed. As early as March and April 2020, the press began requesting information

28 under California's Public Records Act.  To date, no responses have been provided.

97.    Moreover, Defendants have asserted that violations of their orders carry criminal penalties, threatening jail time and significant fines for businesses and individuals that do not comply.

98.    Defendants' Orders violate the Due Process Clause of the Fourteenth Amendment because they fail to give reasonable notice to persons of ordinary intelligence of what actions are forbidden under the law.  Plaintiffs have been forced to operate between a rock and a hard place, trying to comply with all of the applicable Orders, but unable to discern what the applicable law permits. This is precisely the dilemma the Due Process Clause's requirement of fair notice seeks to avoid, particularly where, as here, there is no procedure for Plaintiffs even to challenge the Defendants' Orders.

99.    Defendant Newsom then directed the Office of Emergency Services to "take all necessary steps to ensure compliance with this Order" and that the "Order shall be enforceable pursuant to California law, including, but not limited to, Government Code section 8665."

100.    California Government Code Section 8665 states, "Any person who violates any of the provisions of this chapter or who refuses or willfully neglects to obey any lawful order or regulation promulgated or issued as provided in this chapter, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punishable by a fine not to exceed one thousand dollars ($1,000) or by imprisonment not to exceed six months or by both such fine and imprisonment."

## II.    THE GOVERNOR'S REOPENING ORDER

101.    On May 4, 2020, Governor Newsom issued Executive Order N-60-20 concerning the second and third stages of California's "four-stage framework . . . to allow Californians to gradually resume various activities" ("The Governor's Reopening Order"). The Governor's Reopening Order directed the State Public Health Officer to "establish criteria and procedures. . . to determine whether and how particular local jurisdictions may implement public health measures that depart from the statewide directives," specifically "measures less restrictive than any public health measures implemented on a statewide basis."

A true and correct copy of Defendant Newsom's Executive Order N-60-20 is attached hereto and incorporated by reference as **Exhibit 4**.

102. The Governor's Reopening Order also states that it should not be "construed to limit the <u>existing authority</u> of local health officers" to adopt "more restrictive" or "addition[al]" measures" (emphasis added). Under existing law, "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations <u>not in conflict with general laws</u>." Cal. Const. art. XI, § 7 (emphasis added).

103. And when, as here, the Governor exercises the State's "police power" during a state of emergency, the Governor's "orders and regulations shall have the force and effect of law." Cal. Gov't Code §§ 8567, 8627. Accordingly, the Governor's Reopening Order only allows counties to act within their "existing authority"—that is, to adopt measures that are consistent with the Governor's orders or that address matters on which the Governor's orders are silent. It does not, and cannot be read to, allow a county to override the Governor's Order by extending its authority by extending its authority to include criminal penalties and possible imprisonment.

## IV. PLAINTIFFS' GYM BUSINESSES

### <u>Mission</u>

104. Mission is a large, open air warehouse space located in Alhambra, California that is dedicated to strength training and physical wellness.

105. As a result of Defendants' Orders mandating the closure of "Non-Essential" businesses, on or about March 18, 2020, Horsepower was forced to cease operations indefinitely, and therefore stopped billing its members' monthly dues.

106. Almost immediately after Defendants' issued their March 18, 2020 Order requiring the closure of so-called "Non-Essential" businesses, Mission lost approximately one hundred (100) members.

107. During Mission's closure, they invested thousands of dollars toward compliance with Defendants' Orders, purchasing personal protection equipment, such as masks, gloves,

cleaning supplies, towels, and thermometers for employees. Mission further sought to restructure its facility and invested in marketing to recoup the lost membership.

108. On or about June 12, 2020, Defendants permitted Mission to reopen with certain limitations.

109. Mission reopened in accordance with all of Defendants' then-existing rules and regulations from the government, adhering to strict sanitation guidelines and mandatory social distancing protocols.

110. On July 13, 2020, Defendants mandated the closure of many businesses, including gyms, unless they could be modified to operate outdoors.

111. Shortly thereafter, pursuant to Defendants' Orders, Mission was required to move certain portions of its operations outside; however, Mission's ability to operate outdoors in compliance with Defendants' Orders is and was limited due to the nature of the equipment being physical secured to Mission's facility for safety purposes.

112. As a direct and proximate result of Defendants' Orders, Mission has suffered damages in the amount of approximately $150,00 as a result of lost revenue, restructuring the facility, training new employees on COVID-19 procedures, legal consultations, purchases for personal protective equipment, cleaning supplies, and moving equipment.

**Horsepower**

113. Horsepower is a 3,100 square foot facility that offers support for its members' physical fitness, mental health, nutrition, and overall wellness, taking pride in providing its members with options for injury rehabilitation, nutrition coaching, personalized training, and massage therapy, among other things.

114. As a result of Defendants' Orders, on or about March 18, 2020, Horsepower was forced to cease operations indefinitely, and therefore stopped billing its members' monthly dues.

115. During the closure, Horsepower had its facility professional deep cleaned and purchased additional cleaning equipment and supplies.

116.    While Horsepower remained closed, Horsepower suspended membership fees and collected no dues throughout its closure, despite continuing to pay its staff.

117.    On or about June 12, 2020, Horsepower reopened with new cleanliness and social distancing protocols in accordance with Defendants' Orders. However, this reopening was short-lived.

118.    When, pursuant to Defendants' Orders, Horsepower was allowed to reopen with limitations, Horsepower took precautions as required by Defendants' Orders.

119.    On July 13, 2020, Defendants mandated the closure of many businesses, including gyms, unless they could be modified to operate outdoors.

120.    Unfortunately, weather conditions and the unhealthy air quality made it nearly impossible for Horsepower to continue its operations outdoors.

121.    Horsepower purchased canopies and moved as much equipment as possible outdoors to comply with Defendants' Orders; however, much of Horsepower's equipment is physically secured into the walls of the facility and cannot be transported.

122.    At the same time, Horsepower was undergoing near constant inspections by a so-called task force, which further discouraged membership with Horsepower.

123.    As a direct and proximate result of Defendants' Orders, Horsepower has suffered damages  in the amount of approximately $250,000 as of August 31, 2020 as a result of new COVID-19 procedures, legal consultations, new equipment, sanitation, cleaning supplies, canopies and other outdoor equipment, and other upgrades to the facility.

**Triad**

124.    Triad is a health and strength complex in Azusa, California that centers around the concept of helping individuals treat physical and mental ailments through exercise.

125.    As a result of Defendants' Orders, on or about March 18, 2020, Triad was forced to cease operations indefinitely, and therefore stopped billing its members' monthly dues.

126.    On or about June 12, 2020, Triad reopened with new cleanliness and social distancing protocols in accordance with Defendants' Orders. However, this reopening was short-lived.

127.   On July 13, 2020, Defendants mandated the closure of many businesses, including gyms, unless they could be modified to operate outdoors.

128.   Despite Triad's compliance with Defendants' Orders, both Azusa Police Department and Los Angeles County Sheriff's Department fined Triad for alleged non-compliance with Defendants' Orders; yet, neither the Azusa Police Department and/or the Los Angeles County Sheriff's Department could specify how Triad failed to comply with Defendants' Orders or how Triad could obtain compliance.

129.   As a direct and proximate result of Defendants' Orders, Triad has suffered damages  in the amount of approximately $352,000 as of August 31, 2020 as a result of new COVID-19 procedures, legal fees, citations, personal protection equipment, additional staff and related training, new equipment, cleaning supplies, and other upgrades to the facility.

**Rep Max**

130.   Rep Max is a weightlifting gym in Orange, California that offers specialized group classes.

131.   As a result of Defendants' Orders, on or about March 18, 2020, Rep Max was forced to cease operations indefinitely, and therefore stopped billing its members' monthly dues.

132.   In order to mitigate its losses and allow its clients to continue training, Rep Max began renting its equipment to members and transitioned to online coaching platforms.

133.   Likewise, during this closure period, Rep Max underwent massive restructuring to accommodate any anticipated social distancing requirements. Rep Max separated equipment platforms, provided remote coaching options, and implemented a reservation system. However, despite Rep Max's efforts membership continued to dwindle, and Defendants' Orders further discouraged new members.

134.   On or about June 12, 2020, Rep Max reopened with new cleanliness and social distancing protocols in accordance with Defendants' Orders. However, this reopening only allowed for Rep Max to operate at twenty percent (20%) capacity and was short-lived, again resulting in membership loss.

135.   On July 13, 2020, Defendants mandated the closure of many businesses, including gyms, unless they could be modified to operate outdoors.

136.   In response to Defendants' Orders limiting Rep Max's operations to the outdoors, Rep Max secured a portion of the parking lot for its outdoor operations. Yet, Rep Max remains unable to hold group classes and/or the weightlifting meets that it relied upon to generate revenue and new memberships.

137.   As a direct and proximate result of Defendants' Orders, Rep Max has suffered damages  in the amount of approximately $36,000 as of August 31, 2020 as a result of lost revenue, new COVID-19 procedures, legal fees, citations, sanitation costs, personal protection equipment, cleaning supplies, and depreciation of equipment, among other things.

**SoCal**

138.   SoCal Powerlifting is a strength and fitness center in Irvine, California that caters to the needs of strength athletes.

139.   As a result of Defendants' Orders, on or about March 18, 2020, SoCal was forced to cease all business operations indefinitely, canceling contracts for members and opting not to renew expiring member contracts.

140.   On or about June 12, 2020, SoCal reopened with new cleanliness and social distancing protocols in accordance with Defendants' Orders. In order to comply with these Defendants' Orders s, SoCal secured a new facility with sufficient space for social distancing. However, this reopening was short-lived as SoCal was ordered to operate only outdoors shortly thereafter.

141.   Before SoCal could regain any investment in the newly secured facility and/or newly purchased equipment, Orange County required that any gym and/or fitness activities must be modified to operate outdoors.

142.   Thus, SoCal, after having secured a larger facility and purchasing additional equipment in reliance upon Defendants' Order issued on or about June 12, 2020, was and is unable to operate indoors.

143.   Additionally, Irvine Police Officers have harassed SoCal, in one instance waiting around for hours until a staff member left despite having been told the person was a staff member.

144.   As a direct and proximate result of Defendants' Orders, SoCal has suffered damages  in the amount of approximately $125,000 as of August 31, 2020 as a result of lost revenue, new COVID-19 procedures, legal fees, citations, sanitation costs, personal protection equipment, additional staff and related training, new equipment, cleaning supplies, tents, and securing a new facility.

**FX**

145.   FX is an individualized training facility and health studio in Temecula, California that offers, among other things, personalized nutrition plans, coaching, therapy, and wellness options.

146.   Despite being a health studio, Defendants' Orders deemed FX a "Non-Essential" business and therefore FX was forced to cease all business operations indefinitely.

147.   On or about June 12, 2020, Defendants' Orders allowed FX to reopen with modifications.

148.   FX reopened with strict sanitation protocols and cleaning guidelines in accordance with Defendants' Orders, hiring a sterilization company and purchasing additional cleaning supplies and personal protective equipment.

149.   FX further reopened with limited capacity in order to ensure compliance with Defendants' Orders, as well as the safety of FX's clients. FX allowed for extra time to allow thorough cleaning and disinfecting between clients.

150.   However, on or about July 13, 2020, Defendants mandated the closure of many businesses, including gyms, unless they could be modified to operate outdoors.

151.   As a result of this additional limitation on FX's operations, FX lost approximately sixty-five percent (65%) of its members.

COMPLAINT

152.   Jane Joaquin, as the Managing Member of FX, has experienced a sharp decline in her mental health, resulting in severe depression, panic attacks, migraines, and physical ailments.

153.   As a direct and proximate result of Defendants' Orders, FX has suffered damages  in the amount of approximately $68,000 as a result of lost revenue, COVID-19 procedures, legal fees, sanitation costs, personal protection equipment, additional staff and related training, new equipment, cleaning supplies, extra staff, and other upgrades to the facility.

**The Gym**

154.   The Gym is a large 35,000 square foot facility that boasts cycle studios, saunas, a nutrition shop, tanning beds, and state-of-the-art equipment.

155.   As a result of Defendants' Orders, on or about March 18, 2020, The Gym was forced to cease all business operations indefinitely, and therefore stop billing its members' monthly dues.

156.   On or about June 12, 2020, The Gym reopened with new cleanliness and social distancing protocols in accordance with Defendants' Orders. However, this reopening was short-lived as The Gym was ordered to operate only outdoors shortly thereafter.

157.   As a result of Defendants' Orders requiring The Gym to operate outdoors, The Gym was forced to reduce its operating hours to allow for additional cleaning and disinfectant. Additionally, The Gym incurred, and continues to incur, significant additional costs for staff to move equipment outside and in accordance with Defendants' Orders.

158.   As a direct and proximate result of Defendants' Orders, The Gym has suffered damages  in the amount of approximately $1,164,000 as a result of lost revenue, COVID-19 procedures, legal fees, citations, sanitation costs, personal protection equipment, additional staff and related training, new equipment, cleaning supplies, extra staff, and other upgrades to the The Gym's facility.

**All Sports**

159.   All Sport is a specialized fitness facility consisting of 12,000 square feet that offers gymnastics training, strength training, and general fitness programs, in addition to pilates, yoga, spin, personal training, and group training.

160.   As a result of Defendants' Orders, on or about March 18, 2020, All Sports was forced to cease operations indefinitely, and therefore stop billing its members' monthly dues.

161.   Moreover, All Sports was forced to cancel an entire gymnastics program as a result of Defendants' Orders.

162.   Throughout the pandemic, All Sports, by and through its staff members, has worked tirelessly to restructure, disinfect, and sanitize All Sports' facility in order to comply with all applicable COVID-19 standards.

163.   On or about June 12, 2020 All Sports reopened with new cleanliness and social distancing protocols in accordance with Defendants' Orders. However, this reopening was short-lived.

164.   On July 13, 2020, Defendants mandated the closure of many businesses, including gyms, unless they could be modified to operate outdoors.

165.   All Sports was able to resume its business with outdoor operations on or around July 13, 2020; however, this added costs while still resulting in a decline in All Sports' membership.

166.   As a direct and proximate result of Defendants' Orders, All Sports has suffered damages  in the amount of approximately $720,000 as a result of lost revenue, COVID-19 procedures, legal fees, citations, sanitation costs, personal protection equipment, additional staff and related training, new equipment, cleaning supplies, extra staff, and other upgrades to the All Sports' facility.

**KO**

167.   KO is a large specialty gym and training facility that caters to all levels of lifters and athletes, from beginners to the most experienced professionals. KO offers individual

personal training, nutrition coaching, as well as a plethora of weight machines and other equipment.

168.   As a result of Defendants' Orders, on or about March 18, 2020, KO was forced to cease operations indefinitely, and therefore stop billing its members' monthly dues.

169.   Throughout the pandemic, KO, by and through its staff members, has worked tirelessly to restructure, disinfect, and sanitize KO's facility in order to comply with all applicable COVID-19 standards.

170.   Despite KO's efforts to remain compliant, Defendants arbitrarily denied KO's requests to open.

171.   On or about July 2, 2020, KO reopened with new cleanliness and social distancing protocols in accordance with Defendants' Orders. However, this reopening was short-lived.

172.   On July 13, 2020, Defendants mandated the closure of many businesses, including gyms, unless they could be modified to operate outdoors.

173.   KO was able to resume its business with outdoor operations on or around July 27, 2020.

174.   In anticipation of reopening, KO invested thousands of dollars toward sanitation products, disinfectants, personal protection equipment, and thermometers, among other things.

175.   When the state mandate allowed for gyms to operate outdoors only, KO purchased tents and created an outdoor area to the best of his ability, but the available outdoor space is much smaller than his equipment requires.

176.   Even when KO Gym was open for outdoor services, it was operating as a bare-bones version.

177.   To date, Ventura County has not allowed gyms to resume indoor operations.

178.   Although other counties in the State of California are allowing gyms to operate indoors, KO, by virtue of its location, is still forced to operate outdoors only.

179.   As a direct and proximate result of Defendants' Orders, KO has suffered damages  in the amount of approximately $131,000 as of August 31, 2020 as a result of lost

revenue, new COVID-19 procedures, legal fees, citations, sanitation costs, personal protection equipment, additional staff and related training, new equipment, cleaning supplies, tents, and other upgrades to the KO facility.

**House of Gains**

180.   House of Gains is a fitness center that offers a workout space for elite athletes, specializing in weightlifting, powerlifting, and strength training.

181.   As a result of Defendants' Orders, on or about March 18, 2020, House of Gains was forced to cease operations indefinitely, and therefore stop billing its members' monthly dues.

182.   Throughout the time period of  House of Gains' closure as a "Non-Essential" business, House of Gains, by and through its agents, inquired with the County of Ventura as to when so-called "Non-Essential" businesses would be allowed to reopen. The County of Ventura remained silent.

183.   Finally, on or about May 28, 2020, House of Gains reopened with the approval of the Defendant Salinas, Chief of Police of Port Hueneme's Police Department.

184.   Despite having gained approval from the Defendant Salinas, Port Hueneme police officers continually came to House of Gains' facility to prohibit House of Gains from reopening.

185.   On June 8, 2020, Defendant Salinas served House of Gains with a COVID-19 closure order. Thus, Defendants, by and through Defendant Salinas, issued contradictory and arbitrary orders for House of Gains' closure.

186.   Shortly thereafter, Ventura County allowed gyms to reopen.

187.   House of Gains diligently followed all sanitation protocols set in place by Defendants; despite House of Gains' efforts, the  business remained open for less than a month before being limited to outdoor operations only.

188.   In response, House of Gains obtained a Special Use Permit to operate outdoors and invested in specialized equipment and fencing to comply with Defendants' Orders

189.   In further efforts to comply with Defendants' Orders, House of Gains limited its . operating hours in order to allow for sufficient time to move and sanitize equipment.

190.   Despite House of Gains' efforts to comply with Defendants' Orders, both Port Hueneme Police Officers and Ventura County Sheriffs visited House of Gains' on an almost daily basis to investigate "complaints" they had received. Neither the Port Hueneme Police Officers nor the Ventura County Sheriffs specified how House of Gains was allegedly in violation of Defendants' Orders, nor offered any information as to how House of Gains might ensure compliance with Defendants' arbitrary and ever-changing Orders.

191.   Thus, Defendants continued to issue House of Gains citations, orders to close, and further threatened permanent closure.

192.   As a a direct and proximate result of Defendants' Orders, House of Gains has suffered damages  in the amount of approximately $50,000 as of August 31, 2020 as a result of lost revenue, new COVID-19 procedures, legal fees, citations, sanitation costs, personal protection equipment, additional staff and related training, new equipment, cleaning supplies, tents, and other upgrades to the facility.

## FIRST CLAIM FOR RELIEF

### VIOLATION OF THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT

#### (*By Plaintiffs against All Defendants*)

193.   Plaintiffs incorporate by reference and re-allege each and every allegation set forth in all preceding paragraphs as if fully set forth herein.

194.   The United States Supreme Court has long held that "the Fifth Amendment…was designed to bar Government from forcing people alone to bear public

-32-

burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

195.   Defendants' Orders and Emergency Directives mandated that because Plaintiffs were "Non-Essential" businesses, they were required to shutter and cease all operations as a means to slow the spread of the novel COVID-19. Such a mandate completely and unconstitutionally deprived Plaintiffs of all economically beneficial use of their businesses without just compensation.

196.   Although a sovereign government has an inherent "police power" that is reserved for the States by the Tenth Amendment to the United States Constitution, such "police power" is not without Constitutional limits. *See Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926).

197.   The government's "police power" is restricted by Constitutional considerations, including but not limited to the Fifth Amendments "Takings Clause."

198.   Defendants' Orders, combined with Defendants' enforcement thereof, has caused a total or partial regulatory taking of Plaintiffs' property without just compensation in violation of the Takings Clause of the Fifth Amendment to the United States Constitution. At a minimum, the effect of Defendants' Orders constitute a "partial" taking under the *Penn Central* three-factor test. *See Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). As a result, Defendants' violation of the Takings Clause of the Fifth Amendment has proximately and legally harmed Plaintiffs.

199.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their Constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders and Emergency Directives, namely, the financial harm Plaintiffs have suffered and continue to suffer as a result of Defendants' unlawful Orders and Emergency Directives is such that Plaintiffs may be forced to permanently close.

200.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief, as well as temporary, preliminary, and permanent injunctive relief invalidating the Orders and Emergency Directives and restraining enforcement thereof.

-33-

201.    Accordingly, Plaintiffs have found it necessary to engage the services of private council to vindicate their rights under law and therefore are entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT

### (*By Plaintiffs against All Defendants*)

202.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth in all preceding paragraphs as if fully set forth herein.

203.    The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." The fundamental liberties protected by the Due Process Clause include most of the rights enumerated in the Bill of Rights. *See Duncan v. Louisiana*, 391 U.S. 145, 147-149 (1968).

204.    The liberties afforded by the Due Process Clause of the Fourteenth Amendment further extend to one's personal choices central to individual dignity and autonomy, including intimate choices that relate to personal beliefs. *See, e.g., Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972).

205.    A State "violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015).

206.    Plaintiffs have a fundamental property interest in conducting lawful business activities that are protected by the Due Process Clause of the Fourteenth Amendment.

207.    Defendants' Orders fail to provide sufficient notice of which actions will potentially subject Plaintiffs to civil or the criminal penalties. It would, at best, be unclear to any person of ordinary intelligence what Defendants' Orders collectively prohibit and/or allow.

208.   In addition, Defendants' Orders purport to impose criminal liability on Plaintiffs and their employees should they fail to follow Defendants' Orders. Moreover, Defendants have, at times, threatened to impose criminal liability on Plaintiffs' patrons.

209.   The Executive Orders, and Defendants enforcement thereof, violate Plaintiffs' substantive due process rights secured by the Fourteenth Amendment to the United States Constitution.

210.   In addition, Defendant Counties have violated the Due Process Clause insomuch as it fails to provide any meaningful procedure for challenging its determination that a business is non-essential, either pre or post deprivation of Plaintiffs' constitutional right to use of their property. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432-33 (1982). Instead, Defendants simply announced that Plaintiffs' Gyms were not essential, without any formal process.

211.   Defendants' Orders expressly deprived, and continue to deprive, Plaintiffs of their rights and liberties in lawfully operating their businesses by ordering the closure of "Non-Essential" businesses without affording Plaintiffs with a constitutionally adequate hearing to present their case in favor of allowing Plaintiffs' businesses to remain open.

212.   Accordingly, Defendants failed to comply both procedural and substantive due process requirements as provided for by the Fourteenth Amendment of the United States Constitution when depriving Plaintiffs of their rights and liberties as they relate to Plaintiffs' respective properties / businesses, which would have given Plaintiffs a meaningful opportunity to respond to the Executive Orders and explain how and why the Executive Orders were unconstitutional as applied to Plaintiffs.

213.   Because Defendants' Orders are based upon a procedurally deficient and substantively unlawful process, Defendants directly and proximately damaged Plaintiffs by depriving Plaintiffs of their ability to lawfully operate their respective businesses without unconstitutional government intervention.

214.   Defendants' Orders that require Plaintiffs to abstain from conducting lawful business in the State of California, violates Plaintiffs' rights under the United States Constitution.

215.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their Constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders and Emergency Directives, namely, the financial harm Plaintiffs have suffered and continue to suffer as a result of Defendants' unlawful Orders and Emergency Directives is such that Plaintiffs may be forced to permanently close.

216.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

217.    Plaintiffs respectfully seek a declaration that the Defendant Counties' Orders violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

## THIRD CLAIM FOR RELIEF

### VIOLATION OF THE CALIFORNIA CONSTITUTION

### Right to Liberty (Cal. Const. Art. 1, § 1)

### (*By Plaintiffs against All Defendants*)

218.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth in all preceding paragraphs as if fully set forth herein.

219.    Article 1, § 1 of the California Constitution provides, in relevant part, "Article 1, Section 1: All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

220.    Defendants Orders have interfered both with Plaintiffs' rights and liberties, as set forth in Article 1, Sections 1, 7, and 19 of the California Constitution, as well as deprived Plaintiffs of the use, enjoyment, and ability to operate their respective businesses on account of a discriminatory and arbitrary classification as "Non-Essential" businesses.

221.    Defendants' Orders have proximately and legally caused Plaintiffs' financial harm, which will continue unless and until this Court enjoins Defendants from enforcing their respective Orders.

COMPLAINT

222.   Defendants' Orders that require Plaintiffs to abstain from conducting lawful business in the State of California, violates Plaintiffs' rights under the California Constitution.

223.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their Constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders and Emergency Directives, namely, the financial harm Plaintiffs have suffered and continue to suffer as a result of Defendants' unlawful Orders and Emergency Directives is such that Plaintiffs may be forced to permanently close.

224.   Accordingly, Plaintiffs have found it necessary to engage the services of private council to vindicate their rights under law and therefore are entitled to an award of attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

### FOURTH CLAIM FOR RELIEF

### VIOLATION OF THE CALIFORNIA CONSTITUTION

### Right to Liberty (Cal. Const. Art. 1, § 7)

### (*By Plaintiffs against All Defendants*)

225.   Plaintiffs incorporate by reference and re-allege each and every allegation set forth in all preceding paragraphs as if fully set forth herein.

226.   Article 1, Section 7 of the California Constitution provides, in pertinent part:

Article 1, Section 7:

(a) A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws; provided, that nothing contained herein or elsewhere in this Constitution imposes upon the State of California or any public entity, board, or official any obligations or responsibilities which exceed those imposed by the Equal Protection Clause of the 14th Amendment to the United States Constitution with respect to the use of pupil school assignment or pupil transportation. In enforcing this subdivision or any other provision of this Constitution, no court of this State may impose upon the State of California or any public entity, board, or official any obligation or responsibility with respect to the use of pupil school assignment or pupil transportation, (1) except to remedy a specific violation by such party that would also constitute a violation of the Equal Protection Clause of the 14th Amendment to the United States Constitution, and (2) unless a federal court would be permitted under federal decisional law to impose

COMPLAINT

that obligation or responsibility upon such party to remedy the specific violation of the Equal Protection Clause of the 14th Amendment of the United States Constitution.

227.     The guarantee of equal protection under the California Constitution is substantially equivalent and analyzed similarly to that provided by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *See Kenneally v. Med. Bd.*, 27 Cal. App. 4th 489 (App. 2 Dist. 1994).

228.     Article 1, § 1 of the California Constitution has further been judicial defined as meaning no person or class of persons shall be denied the same protections of the laws enjoyed by other persons or other classes in like circumstances in the lives, liberty, and property, and in their pursuit of happiness. *See People v. Romo*, 14 Cal.3d 189 (1975); *Gray v. Whitmore*, 17 Cal. App. 3d 1 (1971).

229.     Defendants' Orders that require Plaintiffs to abstain from conducting lawful business in the State of California, violates Plaintiffs' rights under the California Constitution.

230.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their Constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders and Emergency Directives, namely, the financial harm Plaintiffs have suffered and continue to suffer as a result of Defendants' unlawful Orders and Emergency Directives is such that Plaintiffs may be forced to permanently close.

231.     Accordingly, Plaintiffs have found it necessary to engage the services of private council to vindicate their rights under law and therefore are entitled to an award of attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

## FIFTH CLAIM FOR RELIEF

### VIOLATION OF CALIFORNIA GOVERNMENT CODE § 8572

### Commandeering Private Property or Personnel

### (*By Plaintiffs against Defendant Newsom*)

232.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth in all preceding paragraphs as if fully set forth herein.

233.     The State of California's Government Code, Title 2, Chapter 7, Article 3, Section 8572, states in pertinent part:

> In the exercise of the emergency powers hereby vested in him during a state of war emergency or state of emergency, the Governor is authorized to commandeer or utilize any private property or personnel deemed by him necessary in carrying out the responsibilities hereby vested in him as Chief Executive of the state and the state shall pay the reasonable value thereof.

234.     On March 4, 2020, Defendant Newsom declared a "State of Emergency" in response to the threat of the spread of COVID-19 throughout California's communities.

235.     Subsequently, on or about March 19, 2020, Defendant Newsom issued Executive Order N-33-20. *See* **Exhibit 2**.

236.     Executive Order N-33-20 states, in relevant part, that "all individuals living in the State of California" "stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors outlined at https://www.cisa.gov/identifying-criticalinfrastructure-during-covid-19."

237.     Defendant Newsom's Order further "identified 16 critical infrastructure sectors (discussed herein) whose assets, systems, and networks, whether physical or virtual, are considered so vital to the United States that their incapacitation or destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof" such that Defendant Newsom ordered that "Californians working in these 16 critical infrastructure sectors continue their work because of the importance of these sectors to Californians' health and well-being."

238.     Defendant Newsom's Order continued, "this Order is being issued to protect the public health of Californians" and that "our goal is simple, we want to bend the curve, and disrupt the spread of the virus."

239.     Defendant Newsom then directed the Office of Emergency Services to "take all necessary steps to ensure compliance with this Order" and that the "Order shall be enforceable pursuant to California law, including, but not limited to, Government Code section 8665."

240.     California Government Code Section 8665 states, "Any person who violates any of the provisions of this chapter or who refuses or willfully neglects to obey any lawful order or regulation promulgated or issued as provided in this chapter, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punishable by a fine not to exceed one thousand dollars ($1,000) or by imprisonment not to exceed six months or by both such fine and imprisonment."

241.     As a result of the issuance of the Governor's Order, California businesses, such as Plaintiffs, were not included in any of the sixteen (16) "critical infrastructure sectors," and therefore were "non-essential" and effectively ordered, under penalty of fine and threat of imprisonment, to cease conducting any of their lawful daily business activities.

242.     By virtue of this Executive Order, Defendant Newsom commandeered and utilized Plaintiffs' businesses for the purpose of slowing the spread of COVID-19.  To date, however, the State of California has not paid Plaintiffs the "reasonable value thereof" in exchange for Defendant Newsom's commandeering and utilization of Plaintiffs' "non-essential" businesses.

243.     Plaintiffs have found it necessary to engage the service of counsel to vindicate their rights under California Government Code Section 8572.  Plaintiffs are entitled to an award of attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

A. Issue a declaratory judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that Defendants' Orders listed above violate the Due Process Clause as applied to Plaintiffs because they fail to provide fair notice of what the law requires;

B. Set aside Defendants' Orders; holding Defendants' Orders to be unlawful;

C. Permanently enjoin Defendants and all persons and entities acting in concert with Defendants, including but not limited to any law enforcement agencies, from enforcing Defendants' Orders;

D. Issue a Temporary Restraining Order and a preliminary injunction preventing Defendants from enforcing or implementing their Orders until this Court rules upon the merits of this lawsuit;

E. Permanently enjoin Defendants and all persons or entities acting in concert with Defendants, including but not limited to any law enforcement agencies, from enforcing the Orders;

F. Award damages arising out of their § 1983 Claims, and specifically under the Fifth Amendment of the U.S. Constitution and Article 1, Section 19 of the California Constitution's Taking Clause(s);

G. Award Plaintiffs the reasonable value of the loss of the respective businesses by virtue of Defendants' Orders pursuant to California Government Code Section 8572;

H. Award reasonable attorneys' fees and costs incurred in this action pursuant to 42 U.S.C. § 1988 and Cal. Gov't Code § 8572; and

I. Any other such relief as this Court may deem just and proper.

Dated:  October 26, 2020          **UPLIFT LAW, P.C.**

By:  _____

Melissa G. Fulgencio
Stephanie Beale
Attorneys for Plaintiffs

-41-

COMPLAINT